**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

2019 MAY 31 P 12: 58

~~DEPUTY CLERK~~

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-cr-    -JDL |
| | ) | |
| DANIELLE DEFOSSE-STROUT | ) | |

## GOVERNMENT'S VERSION OF THE OFFENSE

Had the case proceeded to trial, the evidence would have shown beyond a reasonable doubt that from approximately late 2014 through approximately May 2018, this defendant conspired to execute a scheme to defraud MaineCare in connection with the delivery of or payments for healthcare services.

The evidence would include testimony from lay witnesses, law enforcement personnel involved in the investigation, and public agency records. This evidence would establish the facts outlined below.

For all times relevant to this case, Medicaid was a health care benefit program funded with federal and state funds. It was administered by the U.S. Department of Health and Human Services and by state agencies. In Maine, Medicaid was part of MaineCare and was administered by the Maine Department of Health and Human Services.

Defendant was employed as a case manager at a MaineCare approved healthcare provider of mental health counseling. Most of the services provided by Defendant t were billed in 15 minute intervals. Defendant worked almost exclusively with one interpreter and her client base consisted almost exclusively of beneficiaries who needed an interpreter.

MaineCare would reimburse providers for interpreter services when interpretation services were necessary and reasonable for a provider to communicate effectively with members

regarding health needs.  Interpreter services were only covered in conjunction with another

MaineCare covered service.  Interpreter services were also billed in 15 minute units.

MaineCare data shows that beginning in late 2014, Defendant (through her employer)

began submitting claims for treating numerous patients that were billed with interpreter services.

The interpreter with whom she worked extensively was also interpreting with two other

providers at other locations.

These other providers would testify that beginning in late 2014, at each of their respective

practices, they submitted false billings for both their services and the interpreter services to

MaineCare.  Both would testify they submitted the false billings under pressure from the

interpreter.

In May 2018, investigators obtained medical records from the practice where the

defendant was employed.  A review of the records produced revealed that the defendant had

progress notes and corresponding interpreter sheets claiming services were provided by

Defendant and the interpreter on occasions where the evidence will show that the interpreter was

at other locations, including out of the country.  Further, the records contained multiple progress

notes made by the defendant allegedly for the same visit that described the visit in completely

different ways. The records further revealed that patient records of defendant's patients appeared

to contain false information to justify the continued provision of her services.

Investigators also obtained payroll and hourly records for defendant.  These records show

defendant claimed to have worked in excess of 200 units a week on numerous occasions.  Payroll

records show that Defendant's claimed billings were routinely double that of the other case

managers at her employer.  In addition, payroll records revealed that for some periods, defendant

claimed to have worked seven days a week for continuous weeks.  These records show that most

of Defendant's billings were in conjunction with the interpreter that was involved in the overbilling with the other providers.

A review of Mainecare data reveals that MaineCare reimbursed defendant's employer for most of the claims she submitted for her services and the interpreter services. Payroll records also show that defendant was paid, in part, based upon a percentage of her billings.

Dated at Portland, Maine this 31st day of May, 2019.

HALSEY B. FRANK
UNITED STATES ATTORNEY

Daniel J. Perry
Assistant U.S. Attorney
U.S. Attorney's Office
100 Middle St.
Portland, ME 04101

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 31, 2019 I mailed the foregoing Government's Version of the Offense to the following:

Stacey Neumann, Esq.

<u>/s/Daniel J. Perry</u>
Assistant United States Attorney